## Palmer v. Palmer

570

*Martha B. Walker,* for plaintiff.
*Barbara B. Townsend,* for defendant.

KELLER, *J.*, January 23, 1984—The present divorce action was commenced by plaintiff, Emily Palmer, on August 14, 1981, with the filing of her complaint against the defendant, Sidney M. Palmer. In addition to the alternative divorce grounds of irretrievable breakdown of the marriage and indignities to the person, the plaintiff also requested relief by way of equitable distribution, alimony, alimony pendente lite and counsel fees and expenses. On defendant's motion dated February 19, 1982, the court entered an order appointing Robert C. Schollaert, Esq., master. On April 13, 1982, an order of court was entered at Mr. Schollaert's request revoking his commission and appointing J. Dennis Guyer, Esq., master to hear the issues of division of property, alimony, alimony pendente lite and counsel fees and expenses and to return the record and a transcript together with his report and recommendations. Hearings were conducted by the master on June 10, 11 and 14, 1982, and attended by the parties and their counsel.

Defendant filed his affidavit of consent to plaintiff's divorce action on November 16, 1981, and plaintiff filed her affidavit of consent on February 7, 1983. Therefore, the matters heard by the master were properly at issue. The master filed his report

on July 8, 1983, after giving notice to the parties' counsel. Both parties filed exceptions to the master's report on July 22, 1983, having obtained an order of court extending the time for filing exceptions to that date. Plaintiff listed the matter for argument and the same was heard by this court on September 1, 1983.

A review of the evidence establishes the following facts. The parties were married on November 29, 1952 and separated on December 29, 1979. They are the parents of four children ranging in age from 18 to 26. The oldest, Lynne, graduated from Bucknell, holds an M.A. degree from Purdue University and is married. Sidney, Jr. (Todd), 24, was living in Philadelphia and completing his last term of studies at Temple University at the time of the master's hearing. Paige, 23, holds a degree from Elizabethtown College, is employed, married and living in Chambersburg. The youngest child, Grant, is a sophomore at Bucknell University.

The parties agreed to value all assets as of December 1, 1980, since there were marriage counseling sessions during 1980 in the hope of reconciliation. By stipulation the marital real estate of the parties and its value is:

1. 132 College Avenue,
   Chambersburg                    $  126,000.00
2. 574-576 Nelson St.,
   Chambersburg                        33,750.00
3. 429-431 Lincoln Way East,
   Chambersburg                        25,000.00
4. 289-291 Lincoln Way West,
   Chambersburg                        29,000.00
5. 72 Lincoln Way West,
   Chambersburg                        90,000.00
6. 357-361 W. King St.,
   Chambersburg                        57,500.00

| | | |
|---|---|---|
| 7. | 352 Philadelphia Avenue, Chambersburg | 23,000.00 |
| 8. | 42 S. Main St., Chambersburg (one-half interest) | 28,200.00 |
| 9. | Horse Valley cabin | 8,500.00 |
| 10. | 27 William Penn Drive, Chambersburg | 55,000.00 |

At the beginning of the first day of the master's hearing, the parties also read the following stipulation into the record:

"Any settlement distribution shall distribute to husband the house on College Avenue, and to wife the house at 55 William Penn Drive, and to each their respective vehicles, stock portfolios, certificates of deposit, treasury notes, and checking or savings account."

The master agreed to accept the stipulation as a recommendation only.

The following items were stipulated to be marital property with values as hereinafter set forth:

| | | |
|---|---|---|
| 1. | Oriental rug | $ 8,000.00 |
| 2. | Mr. Palmer's car | 1,000.00 |
| 3. | Mrs. Palmer's car | 4,000.00 |
| 4. | Stouffer contract | 19,750.00 |
| 5. | Mr. Palmer's life insurance (cash surrender value) | 5,877.00 |
| 6. | Coin collection | 3,889.00 |
| 7. | Mr. Palmer's stock | 70,652.00 |
| 8. | Mrs. Palmer's stock | 64,800.00 |
| 9. | Mr. Palmer's certificates of deposit | 6,000.00 |
| 10. | Mrs. Palmer's certificates of deposit | 11,000.00 |
| 11. | Mr. Palmer's gun collection | 9,585.00 |
| 12. | Mr. Palmer's checking account | 3,500.00 |
| 13. | Mrs. Palmer's savings account | 7,000.00 |

Subsequent to the filing of the master's report the parties stipulated that the following indebtedness be construed as marital debts:

1. Life insurance indebtedness     $    26,129.00
2. Chambersburg Trust Company     10,500.00
3. Brechbill Helman     6,500.00

Defendant, Sidney M. Palmer, aged 54, is employed by Valley Bank and Trust Company as its Executive Vice President with an annual salary of $36,400. He holds both B.A. and M.B.A. degrees., Mrs. Palmer is also 54 and holds B.A. and M.A. degrees. She worked part-time as a guidance counsel for the Lincoln Intermediate Unit during the latter years of the marriage. Mrs. Palmer is presently enrolled at the Andover Newton Divinity School where she has completed two years of a three-year program. Upon successful completion of her studies, she will become an ordained minister and hopes to obtain employment with a church. The parties stipulated that Mrs. Palmer would probably begin employment at a salary of $14,000 with fringe benefits of approximately $2,000.

The parties entered into their marriage with assets of substantially the same value. Neither party disputes the other's valuable contributions to the marriage and the family unit. Mrs. Palmer portrayed her life as one of a busy homemaker who frugally managed her money. Mr. Palmer, on the other hand, was the primary breadwinner through his business activities, real estate and stock portfolio management.

The parties lived well during their years of marriage enjoying several vacations over the years, educating their children in private colleges, living in a nice home with a tennis court and swimming pool, managing to save significant amounts, and having

enough funds to purchase investment real estate properties.

Mr. Palmer's health is excellent. Mrs. Palmer has controllable high blood pressure, arthritis, phlebitis and asthma for which she takes medication daily.

There are a total of 58 exceptions to the master's report which are currently before the court for decision. In order to facilitate an orderly discussion of these numerous objections, we have divided them into the following categories: (1) Procedural Requirements (plaintiff's exceptions, 6, 7, 8, 9, 10, 11, 12 and 13; defendant's exceptions 1); (2) master's rulings on objections to evidence (plaintiff's exceptions 2, 3 and 4; defendant's exceptions 28, 29, 30 and 32; (3) marital v. non-marital property — China, Stock hold in Trust, Pensions (plaintiff's exceptions 15 and 16; defendant's exceptions 5, 6, 11 and 15); (4) value of plaintiff's stock (defendant's exception 9); (5) Consideration of Income Tax Implications (plaintiff's exceptions 1, 17 and 21); (6) Consideration of Future Inheritances (plaintiff's exception 5; defendant's exceptions 12 and 21); (7) Equitable Distribution (plaintiff's exceptions 14, 18 and 19; defendant's exception 24); (8) Alimony (plaintiff's exceptions 20 and 21; defendant's exceptions 8, 16, 17, 18, 19, 20, 22, 23 and 34); (9) Alimony Pendente Lite (plaintiff's exception 22; defendant's exceptions 25, 26 and 33); and (10) Counsel Fees and Expenses (plaintiff's exceptions 23 and 24).

We note that the remainder of defendant's exceptions (2, 3, 4, 7, 10, 13, 14, 27 and 31) either request specific findings of fact, are repetitive, or are ambiguous. The requests for specific findings point out information that will be considered by this court in the appropriate category, if not already discussed (Nos. 2, 3, 4 and 10). However, the master's failure

to include this information as specific findings of fact does not constitute error and these exceptions are dismissed. The remainder of this group are also dismissed (Nos. 7, 13, 14, 27 and 31).

I. Procedural Requirements (plaintiff's exceptions 6, 7, 8, 9, 10, 11, 12 and 13; defendant's exception 1)

A review of the many documents filed in this case reveals that defendant's income and expense statement is attached to his answers to the interrogatories posed by plaintiff. Since the master obviously had this document at his disposal, we fail to see how either party would benefit from an additional delay in sending the matter back to the master for technical compliance with Pa.R.C.P. 1920.54(a). It will suffice to note that defendant's income and expense statement is part of the record and is labelled "#28" at the end of interrogatories to defendant which were filed on May 19, 1982.

The remainder of the parties' exceptions to procedural requirements deal with the master's failure to comply with various portions of Pa.R.C.P. 1920.53. We note that the grounds for divorce pursued in this action are that the marriage is irretrievably broken under Section 201(c) of the Divorce Code. Consequently, the motion for the appointment of a master did not include a request regarding grounds for divorce. The three sections of Pa.R.C.P. 1920.53 that set forth specific procedural requirements refer to actions "in which the action of divorce or for annulment and any claim which may be joined under the Divorce Code are heard by a master," (Pa.R.C.P. 1920.53(a)), "in which the claim of divorce or annulment is contested." (Pa.R.C.P. 1920.53(b)), and "in which the claim of divorce or annulment is uncontested," (Pa.R.C.P. 1920.53(c)). Therefore, it

is clear that Pa.R.C.P. 1920.53 is inapplicable to this no-fault divorce action.

The rule the master must look to for guidance in a case such as this is Pa.R.C.P. 1920.54 which in turn refers to Pa.R.C.P. 1920.51. These two rules govern the format to be employed by masters in disposing of claims for equitable distribution of marital property, alimony, alimony pendente lite, counsel fees, costs and expenses.

Plaintiff's exceptions 7, 8, 9, 10, 11, 12 and 13 and defendant's exception 1 are dismissed.

II. Master's ruling on objections to evidence (plaintiff's exceptions 2, 3 and 4; defendant's exceptions 28, 29, 30 and 32)

Plaintiff's exception 2 contends that the master erred in admitting defendant's exhibit No. 8 into evidence without supporting worksheets. A review of Robert Snyder's testimony reveals that the exhibit objected to is a summary in chart form of the various computations made by him. Plaintiff's counsel had an adequate opportunity to cross-examine the witness concerning the exhibit and the figures. We find no error in the admission of the exhibit. As to the objection that the exhibit contained irrelevant information, see our discussion in Part V below.

Plaintiff's exceptions 3 and 4 relate to the qualifications of Dr. Joseph W. Hunt, Jr., as an expert witness and his response to a hypothetical questions posed by defendant's counsel. The record discloses that Dr. Hunt has a Ph.D. in economics and is currently the Dean of the School of Business and a Professor of Economics at Shippensburg University. He previously testified in both Pennsylvania and Delaware courts concerning loss of earnings and specifically had testified in Franklin County in domestic relations situations. In our judgment that training and experience qualifies Dr. Hunt as an ex-

pert in the earnings area. Furthermore, we find that the proper foundation was laid to permit Dr. Hunt to respond to the hypothetical question asked by defendant's counsel. Plaintiff's exceptions 3 and 4 are dismissed.

Defendant's exceptions 28, 29, 30 and 32 were neither briefed nor argued before this court. Therefore, we consider them abandoned.

III. Marital v. Non-marital Property — China, Stock Held in Trust, Pensions (plaintiff's exceptions 15 and 16; defendant's exceptions 5, 6, 11 and 15)

Defendant's exceptions 5 and 11 object to the master's finding that the Meissen and Rosenthal china were marital property, and the award of the Meissen china to plaintiff. Preliminary we note that counsel for defendant is correct in her observation that the master reversed the values given the two sets of china by both parties. The Meissen china has a reasonable value of $2,500 and the Rosenthal china has a reasonable value of $1,500 (transcript, p. 18).

While plaintiff testified that defendant gave her the Meissen and Rosenthal china as gifts, defendant denies making such gifts. He testified that he acquired both sets of china in Germany prior to his marriage and shipped them home to his mother's house. We find it surprising that Mrs. Palmer stated she does not object to a portion of the collections being awarded to the defendant if, indeed, they were gifts to her as she contends. The fact that the china was displayed with the wedding gifts is not sufficient evidence to permit a finding that both sets of china are marital property. The uncontroverted testimony was that the Meissen and Rosenthal china were bought by defendant prior to his marriage and therefore, we find that they are not marital property

subject to equitable distribution. Defendant's exceptions 5 and 11 are sustained.

Defendant testified at page 86 of the transcript of the master's proceedings that he was the beneficiary of a trust fund established by his mother in 1958. At the time of its establishment, the value of the fund was approximately $6,000. The value as of December 1, 1980 was $8,378. The master included the following item in his distribution to defendant — "Stock in trust for defendant — $8,378." Defendant's exception 6 objects to this trust being included as marital property of the parties.

The Divorce Code states as an exclusion to marital property:

"Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage." 23 P.S. §401(e)(3).

The uncontradicted testimony of the defendant was that the property in trust has increased in value a total of $2,378. Therefore, that is the amount which will be included as a marital asset subject to distribution.

Plaintiff's exceptions 15 and 16 and defendant's exception 15 relate to the master's failure to include the value of both plaintiff's and defendant's pensions as marital assets subject to equitable distribution, and also the master's failure to place any value on defendant's pension.

Plaintiff testified at page 17 of the transcript that she has a pension in the amount of $877 from the Lincoln Intermediate Unit which is not vested. Defendant's pension is one in which his employer contributes a certain sum of money to a retirement plan that would yield benefits at the date of retirement; it is noncontributory.

While we have yet to receive any guidance from the appellate courts on the subject of whether

nonvested pension benefits are subject to equitable distribution under the Divorce Code, we agree with our sister courts in Montgomery and Erie Counties that pensions are marital assets subject to distribution regardless of whether the plan was vested or not vested, matured or not matured on the date of separation. Reese v. Reese, 109 Montgomery Co. L.R. 295 (1981); King v. King, No. 453-A-1974 (Erie Co.). Furthermore, we specifically adopt the rationale of Judge Brydon in Kalinoski v. Kalinoski, F.C. No. 80-530 (Butler Co.) wherein a rational and practical procedure for the evaluation of a nonvested pension plan is set forth.

Subsequent to argument on the parties' exceptions, defendant's Exhibit 16 was presented to the court for its consideration. Both plaintiff and defendant agree that this Exhibit correctly reflects the value to be placed on defendant's pension plan according to the Kalinoski formula. The calculations contained in Exhibit 16 are those of Snyder and Knox, Certified Public Accountants. As per the Kalinoski decision and the stipulated figures of the parties, we calculate the value of defendant's pension plan as follows:

1. The amount of defendant's monthly pension payments.

According to Defendant's Exhibit 10 at page 6, defendant's monthly pension benefit is 20 percent of defendant's average monthly compensation up to $400, plus 50 percent of his average monthly compensation over $400, times the number of years of credited service. Defendant's average monthly gross income from the time he began his employment in 1975 until the time of the parties' separation is $2,274. Applying the percentages as outlined in defendant's exhibit 10, the resulting figure is $1,017.

According to the pension plan, this figure must then be multiplied by a fraction with the numerator being the number of years of credited service and the denominator being 25. In this case the fraction is 18/25 since Mr. Palmer's earliest date of retirement is 1993 at which time he will have 18 years of credited service.

2. Defendant's life expectancy at the time of separation.

Using an ordinary life annuity table, Snyder and Knox determined that Mr. Palmer had a life expectancy of 24.2 years at the time of the parties' separation. Therefore, assuming that the defendant lived to be age 76 and retired at 65, he could expect eleven years of pension benefits, or 132 months. Taking the monthly pension figure of $732, Mr. Palmer's total projected pension would be $96,624 (132 x $732 = $96,624).

3. A discount rate of nine percent was selected as being appropriate.

4. The then-present value of the pension plan at the normal retirement age of 65 is $61,659.

5. The then-present value as determined above must now be discounted to present value, accounting for mortality, disability, and termination.

According to Snyder and Knox, when the $61,659 figure is discounted from age 65 to 51 (the age of defendant at the time of separation), the present value of a monthly pension of $732 to begin at age 65 is $17,493. Further discounting this figure to reflect the fact that a male aged 51 has a seventy-seven percent probability of surviving to age 65, the revised amount is $13,470.

6. Reduce the present value of the pension to account for lack of vesting.

In order for defendant to be 100 percent vested, he must be employed with Valley Bank and Trust

Company for fifteen years. The date of separation was two days before five pension years would have passed. Therefore, the reduction to the present value of $13,470 would be by 5/15 to the nearest whole year. This final calculcation determines the present value of Mr. Palmer's pension at the date of separation to be $4,490 (5/15 x $13,470 = $4,490).

Both plaintiff's and defendant's pensions are marital assets subject to distribution and we accordingly award plaintiff her pension ($877) and one-half the value of defendant's pension ($2,245). Plaintiff's exceptions 15 and 16 and defendant's exception 15 are sustained.

IV. Value of Plaintiff's Stock (Defendant's Exception 9)

Defendant excepts to the master's inclusion in his report of plaintiff's stock at a "stipulated value" of $44,800. The transcript of the master's hearing clearly reveals that plaintiff herself testified that her stock portfolio had a value of $64,800. Since the master gave no justification for changing this value and since he explicitly stated that it was a stipulated value, we conclude that the master's finding of $44,800 rather than $64,800 was a typographical error. Plaintiff's stock is found to have a stipulated value of $64,800.

V. Consideration of Income Tax Implications (Plaintiff's Exceptions 1 and 17)

Plaintiff contends that the master erred in permitting testimony relating to income tax consequences to the defendant of making transfers to the plaintiff since tax consequences are not one of the relevant factors included in the equitable distribution considerations outlined in Section 401(d) of the Divorce Code. Furthermore, she objects to the fact that the master considered income tax conse-

quences in making his recommendation on equitable distribution.

The master stated in his report.

". . . when future opportunities for capital asset acquisition and income are considered, it is obvious that the defendant's position is much superior to that of the plaintiff. Therefore, it becomes necessary to require at least some of the real estate portfolio to be placed in the plaintiff's hands, regardless of any adverse tax consequences to the defendant, as these are outweighed by the Divorce Code's objective that 'economic justice be effectuated between the parties.' (Emphasis supplied.)

This is the only mention made in the report under the Division of Property section of tax consequences to defendant. Section 401(d) of the Divorce Code, 23 P.S. §401, does not list tax consequences as a relevant factor to be considered in making an equitable division of marital property and it is obvious that the master did not base his recommendation on tax consequences or impact. However, we do not feel it was error for the master to admit evidence relating to tax consequences, for we perceive it to be irresponsible to utterly disregard tax consequences and impact in determining what distribution of marital property will be "equitable." Of course, tax consequences and impact are but one of many factors for consideration — certainly not controlling.

VI. Consideration of Future Inheritances (Plaintiff's Exception 5; Defendant's Exceptions 12 and 21)

At the hearing, the master admitted evidence concerning plaintiff's one-fifth interest in a trust fund she will receive upon her father's death. However, if she predeceases her father, then her one-fifth share would pass to her four children. In March of 1982, the trust had a market value of

$229,594. There was also testimony concerning the size of plaintiff's parents' estate and their heirs. While the master did not make a specific finding concerning this fact, he did refer to "the unexpectancies and inheritances of both parties" in the section of his report concerning alimony. Therefore, he was well aware of plaintiff's potential inheritance. We find defendant's exception 12 without merit, for it claims that the master was unaware of plaintiff's potential inheritance. It is dismissed.

Defendant's exception 21 apparently concerns the above-quoted reference in the alimony section of the master's report since this exception complains of the master's error in determining that the defendant had an expectancy of an inheritance. We agree with defendant's contention in that the record of the master's proceedings is devoid of any evidence concerning an expected inheritance on defendant's behalf. However, the omission is the result of the master's failure to allow plaintiff's counsel to pursue that line of examination. Expectancies of inheritances clearly fit within Section 401(d)(5) of the Divorce Code, 23 P.S. §401(d)(5), which lists as a relevant factor in making an equitable distribution determination, "The opportunity of each party for future acquisitions of capital assets and income." The master received testimony concerning this factor as it applied to plaintiff, but sustained an objection to similar testimony being elicited from the defendant. We realize that at the time of the hearing, defendant's children were the beneficiaries of the paternal grandmother's will. However, defendant admitted that his mother made such a provision precisely due to the parties' separation. To state the obvious, it is certainly possible that the will could again be changed at the conclusion of the parties' divorce action.

We indeed feel there is merit to plaintiff's Exception 5. Subsequent to argument, the parties submitted a stipulation of counsel whereby information concerning potential inheritance is revealed. This information is relevant to a final determination of equitable distribution and alimony and will be considered by this court as being part of the record. However, due to the submission of the stipulation, no useful purpose would be served by remanding this matter to the master for further testimony on the potential inheritance issue.

VII. Equitable Distribution (Plaintiff's Exceptions 14, 18 and 19; Defendant's Exception 24)

Plaintiff's exception 14 objects to the master's determination of equitable distribution since the award to plaintiff is only 35 percent of the value of marital assets. This percentage figure is somewhat changed by our findings thus far in that: (1) both sets of china are not marital property subject to distribution; (2) the value of plaintiff's stock is $64,800 rather than $44,800 as written in the master's report; (3) both pensions are marital property subject to distribution; (4) the parties share marital indebtedness in the total amount of $43,129; and (5) defendant's stock in trust has increased a total of $2,378 during the marriage. As a result of these changes to the figures and items included in the master's award, the master's recommendation would now read as follows:

Marital property to be distributed to plaintiff, Emily Palmer

| | | |
|---|---|---|
| 1. | 27 William Penn Drive, Chambersburg | $ 55,000 |
| 2. | Horse Valley Cabin | 8,500 |
| 3. | Plaintiff's car | 4,000 |
| 4. | Stouffer contract | 19,750 |
| 5. | Plaintiff's stock | 64,800 |

6.  Plaintiff's C.D.'s                              11,000
7.  Plaintiff's savings account                      7,000
8.  429-431 L.W.E., Chambersburg                    25,000
9.  289-291 L.W.W., Chambersburg                    29,000
10. 574-576 Nelson St., Chambersburg                33,750
11. Plaintiff's pension                                877
12. One-half present value of defendant's
            pension                                  2,245
                              TOTAL             $260,922

Marital Property to be Distributed to the Defendant, Sidney Palmer

1.  132 College Avenue, Chambersburg      $126,000
2.  72 L.W.W., Chambersburg                 90,000
3.  357-361 W. King St., Chambersburg       57,500
4.  352 Philadelphia Avenue,
            Chambersburg                    23,000
5.  42 S. Main St., Chambersburg            28,200
6.  Oriental rug                             8,000
7.  Defendant's car                          1,000
8.  Defendant's life insurance surrender
            value                            5,877
9.  Coin collection                          3,889
10. Defendant's stock                       70,652
11. Defendant's C. D.'s                      6,000
12. Gun collection                           9,585
13. Defendant's checking account            3,500
14. Stock in trust for defendant            2,378
15. Defendant's pension                      4,490
                    SUBTOTAL              $440,071
CREDITS: ½ value of pension                 −2,245
            Marital indebtedness           −43,129
                    TOTAL                 $394,697
Total marital assets        $655,169
Plaintiff's share                39.8  percent
Defendant's share                60.2  percent

While a 60/40 split may be proper in some cases, this Court finds that economic justice is not effectuated by this recommended division of marital property. Each marital dispute must be evaluated according to the factors enumerated is 23 P.S. §401(d). Therefore, we sustain plaintiff's exception 14.

As proposed by plaintiff's counsel, the following factors weigh in plaintiff's favor: her well-performed role as a homemaker and mother; the fact that she has no pension, minimal life insurance and no medical coverage; little opportunity for future acquisition of capital assets and income as a minister; and she has few investment, managerial, real estate or administrative skills with which to enhance her assets or help her to add to her assets.

On the other side, there are also factors which support a distribution weighed in favor of the defendant; his well-performed role as primary breadwinner and father; his support of the children in their educational pursuits; and his careful management of investments in real estate as well as securities which resulted in the acquisition of valuable marital property. Certainly defendant's support and maintenance of the parties' children since the time of the parties' separation is a relevant factor. Defendant's exception 24 is sustained.

Plaintiff's exception 19 objects to the master's consideration of the issue of alimony in determining the type of equitable distribution to be recommended. Clearly, this was error on the master's part. While the court may consider the effect of a distribution of property made subject to the equitable distribution provisions of the Divorce Code when determining the issue of alimony, the converse is not true. Our determination in the area of equitable distribution shall be based on the factors delineated

in 23 P.S. §401, and the matter of alimony is not one of those factors.

The record shows that the parties were partners in their marriage of many years, that both can expect inheritances, and that they both are of the same age and well-educated.

All of these factors are worthy of consideration and the court must find some starting point at which to begin the weighing process of all the considerations enumerated in 23 P.S. §401(d). The court in Paul W. v. Margaret W., 130 P.L.J. 6, 8 (1982), concluded that "in making an equitable distribution of marital property, the starting point for considering the relevant factors shall be an equal division of the marital property." Three reasons are given for this conclusion: (1) since the divorce legislation does not provide for any particular factors to receive priority, an equal distribution is the only reasonable starting point; (2) historically, joint property was divided equally upon divorce and this will be continued when the enumerated factors do not favor the distribution in a different fashion; and (3) this starting point is consistent with giving both parties an interest in property acquired during the marriage regardless of title. We concur wholeheartedly and adopt the position that the starting point in determining equitable distribution shall be an equal division of the marital property.

After considering all the factors involved in this case that are listed in 23 P.S. §401(d) as relevant factors for equitable distribution cases, this court finds that the scales are weighted evenly on both sides. Accordingly, plaintiff, Emily M. Palmer, is awarded the following marital assets:

|  | Value |
|---|---|
| 1.  27 William Penn Drive, Chambersburg | 55,000.00 |

|     |                                              | Value       |
| --- | -------------------------------------------- | ----------- |
|  2. | Horse Valley Cabin                           | 8,500.00    |
|  3. | Plaintiff's car                              | 4,000.00    |
|  4. | Stouffer contract                            | 19,750.00   |
|  5. | Plaintiff's stock                            | 64,800.00   |
|  6. | Plaintiff's C. D.'s                          | 11,000.00   |
|  7. | Plaintiff's savings account                  | 7,000.00    |
|  8. | 429-431 L.W.E., Chambersburg                 | 25,000.00   |
|  9. | 289-291 L.W.W., Chambersburg                 | 29,000.00   |
| 10. | 574-576 Nelson St., Chambersburg             | 33,750.00   |
| 11. | Plaintiff's pension                          | 877.00      |
| 12. | One-half the present value of defendant's pension | 2,245.00 |
| 13. | One-half interest in 132 College Avenue, Chambersburg | 63,000.00 |

TOTAL $323,922.00

Defendant, Sidney Palmer, is awarded the following marital assets:

|     |                                              | Value        |
| --- | -------------------------------------------- | ------------ |
|  1. | One-half interest in 132 College Avenue, Chambersburg | $ 63,000.00 |
|  2. | 72 L.W.W., Chambersburg                      | 90,000.00    |
|  3. | 357-361 W. King St., Chambersburg            | 57,500.00    |
|  4. | 352 Philadelphia Avenue, Chambersburg        | 23,000.00    |
|  5. | 42 S. Main St., Chambersburg                 | 28,200.00    |
|  6. | Oriental rug                                 | 8,000.00     |
|  7. | Defendant's car                              | 1,000.00     |
|  8. | Defendant's life insurance surrender value   | 5,877.00     |
|  9. | Coin collection                              | 3,889.00     |
| 10. | Defendant's stock                            | 70,652.00    |
| 11. | Defendant's C.D.'s                           | 6,000.00     |
| 12. | Gun collection                               | 9,585.00     |

|  |  | Value |
|---|---|---|
| 13. | Defendant's checking account | 3,500.00 |
| 14. | Stock in trust for defendant | 2,378.00 |
| 15. | Defendant's pension (one-half) | 2,245.00 |

SUBTOTAL $374,826.00
CREDIT: Marital indebtedness − 43,129.00

TOTAL $331,697.00

This division of the marital property results in 49.4 percent being awarded to plaintiff and 50.6 percent to defendant. We feel that such an equitable distribution effectuates economic justice according to all of the relevant factors involved in this particular case — the length of the marriage; the age, amount and sources of income, employability, estate and needs of each; the contribution of each to the education, training, and increased earning power of the other; the opportunity of each for future acquisitions of assets and income; the sources of income of both parties; the contribution of each to the acquisition, preservation, and appreciation of the marital property; the value of individual property set aside to each; the standard of living enjoyed by the parties during the marriage; and the economic circumstances of each party at this time of distribution.

VIII. Alimony (plaintiff's exceptions 20 and 21; defendant's exception 8, 16, 17, 18, 19, 20, 22, 23 and 34)

The majority of defendant's exceptions in this area of the controversy allege that the master erred by failing to make certain specific findings of fact. Again, the master's failure to include certain information as specific findings of fact does not constitute error and these exceptions are dismissed. We have reviewed these objections and the entire record and are well aware of all the factual informa-

tion contained in them. Basically, plaintiff contends that she was not awarded sufficient alimony to meet her needs and defendant claims the master erred in awarding her any amount of alimony.

The Divorce Code provides that reasonable alimony may be awarded if a party lacks sufficient property for his reasonable needs, including but not limited to property distributed according to the equitable distribution section, and the party is unable to support himself through appropriate employment. 23 P.S. §501(a).

The master recommended that alimony be awarded in the amount of $1,000 per month for five years for a total of $60,000. After reviewing all of the factors to be considered in determining whether alimony is necessary, we find that this is a proper case for some award of alimony but not in the amount recommended by the master.

Plaintiff is presently a student at Andover Newton Divinity School and will graduate in May of 1984. Following graduation, she will have to complete a six-month internship before being employable in the field of ministry. We understand that plaintiff will be unable to support herself during the completion of her studies. However, this is a problem of her own making. Plaintiff possesses a master's degree in education yet chose not to seek employment in that field despite being previously employed part-time with the local Intermediate Unit.

This court cannot expect defendant to forever pay alimony to Mrs. Palmer when she now possesses the necessary skills and education to comfortably support herself. However, we refuse to impose a manifest injustice on plaintiff by totally denying her alimony during the remainder of her schooling. Consequently, we award plaintiff alimony in the amount of $400 per month to be paid by defendant

for a 12-month period commencing on the first day of the first month after the entry of a final decree of divorce between the parties and on the first day of each month thereafter until paid in full. This will enable plaintiff to live in reasonable comfort while completing her ministerial courses and internship without forcing her to liquidate assets awarded under her claim for equitable distribution. In making this award, we have considered the relative earnings and earning capacities of the parties, the sources of income of each as well as their expectancies and inheritances, the long duration of the marriage, the standard of living of the parties during the marriage, plaintiff's current educational pursuit, the contribution of plaintiff as a homemaker during the marriage, and the relative needs of the parties.

IX. Alimony Pendente Lite (plaintiff's exception 22; defendant's exceptions 25, 26 and 33)

Plaintiff contends that master erred in failing to recommend adequate alimony pendente lite for her while defendant's position is that plaintiff failed to demonstrate any need for alimony pendente lite. Defendant also contends that plaintiff was not incurring litigation expenses throughout the entire period that alimony pendente lite was recommended by the master.

The purpose of alimony pendente lite is "to ensure that a financially dependent spouse will be able to maintain or defend an action for divorce," Young v. Young, 274 Pa. Super. 298, 302, 418 A.2d 415, 417 (1980); Walter v. Walter, No. F.R. 1981-962 (Franklin County—December 7, 1983). Factors to be considered before making an award of alimony pendente lite are necessity, income, separate estate and the earning potential of each spouse. Young,

supra, at 302-303, 417; Jack v. Jack, 253 Pa. Super. 538, 543, 385 A.2d 469, 472 (1978).

During the entire pendency of this action, plaintiff has been enrolled as a student although already possessing a master's degree. Not only actual earnings are considered but also earning potential. Commonwealth ex rel. McNulty v. McNulty, 226 Pa. Super. 247, 250, 311 A.2d 701, 703 (1973). While the only income plaintiff received was interest and dividends from her separate assets (and one-half the rental income from jointly-owned real estate), it was clearly her choice to further pursue her education in a different field and not actively seek employment. Therefore, an award of more than $100 per week is not justified and plaintiff's exception 22 is denied.

While we feel the master's recommendation of $100 per week alimony pendente lite is reasonable, it is this court's opinion that defendant should be given credit for the $435 per month he has been voluntarily paying plaintiff since she commenced the present proceedings in August of 1981. Applying this credit to the weekly alimony pendente lite, the net result will probably be no lump sum is due and owing plaintiff.

X. Counsel Fees and Expenses (plaintiff's exceptions 23 and 24)

The parties stipulated at the master's hearing that the fees submitted by plaintiff's counsel are fair and reasonable; therefore, plaintiff requested payment of $5,351.25, an amount representing attorney's fees incurred as of July 30, 1982.

The same considerations used in determining alimony pendente lite must be used in ruling on an award of counsel fees. Wiegand v. Wiegand, 242 Pa. Super. 170, 177, 363 A.2d 1215, 1218 (1976). As discussed by the court in Stanton v. Stanton, 112 Montg. Co. L.R. 234 (1983):

" 'Reasonable counsel fees are to be paid a spouse in order to promote the administration of fair and impartial justice by placing the parties on a par in defending their rights.' Hoover v. Hoover, 288 Pa. Super. 159, 161, 431 A.2d 337, 338 (1981). In determining a reasonable amount consideration must be given to Husband's ability to pay, Wife's actual need and the value of counsel's advice. (citations omitted)"

Plaintiff and defendant now find themselves in nearly equal financial positions as a result of the assets having been equitably distributed, and alimony pendente lite and alimony awarded. In our judgment each party should bear the expense of their individual costs and counsel fees since their abilities to pay and needs are also equal. Plaintiff's exceptions 23 and 24 are dismissed.

## DECREE

Now, this January 23, 1984, plaintiff's exceptions 5, 6, 14, 15, 16 and 19, and defendant's exceptions 5, 6, 11, 15 and 24 are sustained. All other exceptions are dismissed.

Emily Palmer, plaintiff, is awarded the marital assets as hereinafter set forth:

| | | |
|---|---|---|
| 1. | 27 William Penn Drive, Chambersburg | 55,000.00 |
| 2. | Horse Valley Cabin | 8,500.00 |
| 3. | Plaintiff's car | 4,000.00 |
| 4. | Stouffer contract | 19,750.00 |
| 5. | Plaintiff's stock | 64,800.00 |
| 6. | Plaintiff's C. D.'s | 11,000.00 |
| 7. | Plaintiff's savings account | 7,000.00 |
| 8. | 429-431 L.W.E., Chambersburg | 25,000.00 |
| 9. | 289-291 L.W.W., Chambersburg | 29,000.00 |

| | |
|---|---|
| 10. 574-576 Nelson St., Chambersburg | 33,750.00 |
| 11. Plaintiff's pension | 877.00 |
| 12. One-half the present value of defendant's pension | 2,245.00 |
| 13. One-half interest in 132 College Avenue, Chambersburg | 63,000.00 |
| TOTAL | $323,922.00 |

Sidney M. Palmer, defendant, is awarded marital assets as hereinafter set forth:

| | |
|---|---|
| 1. One-half interest in 132 College Avenue, Chambersburg | $ 63,000.00 |
| 2. 72 L.W.W., Chambersburg | 90,000.00 |
| 3. 357-361 W. King St., Chambersburg | 57,500.00 |
| 4. 352 Philadelphia Avenue, Chambersburg | 23,000.00 |
| 5. 42 S. Main St., Chambersburg | 28,200.00 |
| 6. Oriental rug | 8,000.00 |
| 7. Defendant's car | 1,000.00 |
| 8. Defendant's life insurance surrender value | 5,877.00 |
| 9. Coin collection | 3,889.00 |
| 10. Defendant's stock | 70,652.00 |
| 11. Defendant's C.D.'s | 6,000.00 |
| 12. Gun collection | 9,585.00 |
| 13. Defendant's checking account | 3,500.00 |
| 14. Stock in trust for defendant | 2,378.00 |
| 15. Defendant's pension (one-half) | 2,245.00 |
| SUBTOTAL | $374,826.00 |
| CREDIT: Marital indebtedness | −43,129.00 |
| TOTAL | $331,697.00 |

Plaintiff, Emily Palmer, is awarded alimony in the amount of $400 per month for 12 months payable on the first day of the first month after the entry of a

final decree in divorce between the parties, and on the first day of each month thereafter until paid in full.

Defendant, Sidney M. Palmer, shall pay to plaintiff, Emily Palmer, alimony pendente lite in the amount of $100 per week commencing on the Monday following August 14, 1981. Credit shall be given Sidney M. Palmer for all voluntary monthly payments made to Emily Palmer from and after August 14, 1981. Any balance of alimony pendente lite due the plaintiff as of the date of a final decree in divorce between the parties shall be forthwith paid. Any credit balance due the defendant as of the date of said final decree shall be applied to monthly alimony payments due plaintiff.

Each party to pay their own costs.

Exceptions are granted plaintiff and defendant.